# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH SCHESSLER,<br><br>                    Plaintiff,<br><br>         v.<br><br>KOSTECKY, *et al.*,<br><br>                    Defendants. | Case No.  1:23-cv-01012-BAM (PC)<br><br>ORDER VACATING FINDINGS AND RECOMMENDATIONS<br>(ECF No. 10)<br><br>SCREENING ORDER DISMISSING CERTAIN CLAIMS AND DEFENDANTS<br>(ECF No. 8) |

**I.     Procedural Background**

Plaintiff Joseph Schessler ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action was removed by Defendants from Madera County Superior Court on July 6, 2023.  (ECF No. 1.)  All parties have consented to Magistrate Judge jurisdiction.  (ECF Nos. 6, 11.)

On September 6, 2023, the undersigned screened Plaintiff's first amended complaint and issued an order directing the Clerk of the Court to randomly assign a District Judge to this action, and findings and recommendations to dismiss certain claims.  (ECF No. 10.)  However, as noted above, all parties have consented to Magistrate Judge jurisdiction.  Accordingly, the erroneously assigned District Judge was removed from this action, (ECF No. 11), and the findings and recommendations are vacated as unnecessary.

///

Plaintiff's first amended complaint, filed September 6, 2023, is therefore currently before the Court for screening. (ECF No. 8.)

## II.     Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

## III.    Plaintiff's Allegations

Plaintiff is currently housed at Valley State Prison ("VSP") in Chowchilla, California, where the events in the complaint are alleged to have occurred. Plaintiff names M. Bass, correctional counsellor II, as the sole defendant.[1] Plaintiff alleges as follows.

///

---

[1] As it appears Plaintiff has voluntarily dismissed the other defendants named in the original complaint, those individuals will be dismissed from this action.

On 5/27/21, Officer Rosa Avila confiscated Plaintiff's MP3 player and SD card.  Plaintiff demanded the return of the property and filed a grievance against Avila.  Avila threatened Plaintiff, "sue me and see what happens to you," and caused Plaintiff to fear violence against him or his property.  On 1/12/22, Plaintiff filed a civil complaint against Avila, and the envelope had been opened outside Plaintiff's presence.  On 2/8/22, the Madera County Sheriff served the complaint on Avila at VSP.

The lawsuit set in motion a series of acts by correctional officers to retaliate on Plaintiff for filing the lawsuit.  On 4/12/22, Defendant Bass contacted Plaintiff for having a potential high risk COVID score.  He said Plaintiff would have to appear before the classification committee and would be transferred unless he was vaccinated.  Plaintiff said that he already had COVID and that the transfer is retaliatory for Plaintiff filing a lawsuit against an officer.  Bass replied, "What did you expect."  On 4/13/22, Plaintiff presented his COVID risk score to the correctional counsellor that his risk score was a low risk 2, not a high risk 3, and requested to see his doctor to correct the COVID risk score.  The request to see his doctor would take up to 14 days.  Plaintiff had as proof an email from Captain Danbacher stating that inmates who have had a prior COVID infection do not need to be transferred and also showed the counsellor Plaintiff's granted religious exemption chrono from the COVID vaccination requirements.  Plaintiff had had COVID previously.  The Counselor telephoned Bass advocating to allow Plaintiff the time to see his doctor.  Bass insisted Plaintiff had to appear before the classification committee in six days with proof of vaccination or Plaintiff would be transferred.

Plaintiff appeared on 4/19/22 and Bass was the chairperson.  Plaintiff provided the COVID documentation showing he had had COVID, the Captain's email, and the religious exemption chrono.  Bass is responsible for confirming the accuracy of inmates' COVID scores.

Bass was deliberately different in not allowing the same opportunity to correct his COVID score as he allowed other inmates.  Bass coerced Plaintiff to get a vaccine by threatening a transfer, even though VSP had alternate housing where Plaintiff could have been housed.  Bass' threat had a chilling effect on Plaintiff's right to religious freedom.  "Bass compelled Plaintiff to modify his genuinely held religious beliefs and shamefully waived his religious exemption from

3

the COVID vaccine to avoid transfer.  Plaintiff was forced to choose between an adverse transfer or altering his sincerely held religious beliefs.  Plaintiff was vaccinated on 4/22/22.  Plaintiff was harmed as a result of Bass' deliberate indifference to Plaintiff's religious freedom and deprived Plaintiff of his protected liberty interest in bodily integrity.

On 4/27/22, Plaintiff met with his treating doctor who said that someone wrongfully added an asthma diagnosis to Plaintiff medical records which elevated Plaintiff's COVID risk score.  The doctor confirmed that Plaintiff was not diagnosed with asthma, and the doctor contacted CCHCS compliance and had Plaintiff's COVID risk score lowered.  If Bass had allowed Plaintiff another fourteen days to meet with the doctor, Plaintiff's freedom of religion would not have been violated as Plaintiff would not have had to take the COVID vaccine.

Bass' acts were not in furtherance of a legitimate penological interest and had a chilling effect on Plaintiff.  Plaintiff feared further retaliation against his person and property if he filed another grievance against an officer.  Regardless of Plaintiff's fear, Plaintiff filed a grievance against Bass and others on 5/14/22.

Bass' action caused Plaintiff to suffer, nervousness, grief, anxiety, depression and other injuries, exacerbating Plaintiff chronic cardiac disease and neurological condition.

In claim 1, Plaintiff alleges a First and Fourteenth Amendment violation.  Bass' action deprived Plaintiff of equal protection and to be free from retaliatory punishment from filing grievances and civil actions.  Bass retaliated because Plaintiff filed grievances and a civil action and the retaliation chilled Plaintiff's exercise of his rights.

In claim 2, Plaintiff alleges a First and Fourteenth Amendment violation.  Bass denied Plaintiff equal protection by failing to provide Plaintiff with a meaningful and reasonable opportunity to remedy Plaintiff's wrongful COVID risk score as was provided to other similarly situated inmates. In addition, Bass was deliberately indifferent to Plaintiff right to free exercise of religion when Plaintiff refused to acknowledge and honor Plaintiff religious exemption from the COVID vaccine requirement and ignored the email from Captain Danbacher that inmates with prior COVID infection do not need to be transferred.  Plaintiff religious beliefs are sincerely held and were approved by the Chaplain, Warden and members of the Religious Review Committee.

1 Plaintiff's claim is rooted in his religious beliefs. Bass exerted substantial pressure to modify
2 Plaintiff's' behavior and beliefs. Plaintiff has suffered loss, damage, loss of liberty, humiliation,
3 embarrassment, alienation from God, mental and emotional distress and physical distress.

In claim 3, Plaintiff alleges violation of the Tom Bane Civil Rights Act, Civil Code §52.1. Plaintiff incorporates the prior allegations. Plaintiff alleges "through threat, intimidation, and coercion, Bass retaliated on Plaintiff for engaging in a protected activity, and interfered with Plaintiff's right to equal protection and fee exercise of religion."

As remedies, Plaintiff seeks compensatory and punitive damages, and statutory penalties.

## IV. Discussion

### A. First Amendment - Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270. A plaintiff must plead facts showing that their "protected conduct was the substantial or motivating factor behind the defendant's conduct." *Id.* at 1271. To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1153 (E.D. Wash. 2014). A prison transfer may also constitute an adverse action. *See Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005) (recognizing an arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault as retaliation for filing inmate grievances); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (finding that a retaliatory prison transfer and double-cell status can constitute a cause of action for retaliation under the First Amendment).

///

Plaintiff claims he engaged in protected conduct of filing a complaint against Officer Aliva, which was served on Officer Avila on 2/8/22. About two months later, Defendant Bass contacted Plaintiff for having a potential high risk COVID score and said Plaintiff would have to appear before the classification committee to be transferred unless he was vaccinated. Plaintiff said that he already had COVID and that the transfer is retaliatory for Plaintiff filing a lawsuit against an officer. Bass replied, "What did you expect." These allegations raise the inference that Bass knew of the lawsuit because in response to Plaintiff saying Bass was retaliating for Plaintiff filing a lawsuit against an officer, Bass replied "what did you expect." Plaintiff alleges that the adverse action chilled Plaintiff's First Amendment rights and that it did not reasonably advance a legitimate correctional goal because Plaintiff already had COVID and per the Captain, should not be transferred. Liberally construing the allegations Plaintiff engaged in protected conduct for which he was retaliated.

### B.     First Amendment – Free Exercise of Religion

A plaintiff asserting a free exercise claim must show that the defendant's actions substantially burden his practice of religion. *See Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* (internal quotation marks and citations omitted). "[A] prison policy that intentionally puts significant pressure on inmates ... to abandon their religious beliefs ... imposes a substantial burden on [the inmate's] religious practice." *Shakur v. Schriro*, 514 F.3d 878, 889 (9th Cir. 2008) (internal quotation marks and citation omitted). However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. *See McElyea v. Babbit*, 833 F.2d 196, 197 (9th Cir. 1987).

"[A] prisoner's right to free exercise of religion 'is necessarily limited by the fact of incarceration.' " *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015) (citation omitted). " 'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a

'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.' " *Id*. (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).) "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.' " *Id.* (quoting *O'Lone*, 482 U.S. at 349). "A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion." *Jones*, 791 F.3d at 1031; *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith.  *Shakur*, 514 F.3d at 884-85. "[T]he availability of alternative means of practicing religion is a relevant consideration" for claims under the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 862 (2015).

Liberally construing the allegations, Plaintiff states a cognizable claim that Defendant Bass forced Plaintiff to act contrary to his religious beliefs and practices and exerted substantial pressure on Plaintiff to modify his behavior in violation of his religious belief.  Plaintiff alleges that he had evidence that he was religiously exempt from the COVID vaccination, approved by the Chaplain and Warden, such that he could not be compelled to take the vaccine.  That Plaintiff was faced with a choice (an alternative) – take the vaccine or be transferred – does not negate Plaintiff's claim because availability of alternative means of practicing religion is an evidentiary issue.

**C.    Equal Protection**

The Equal Protection Clause requires the State to treat all similarly situated people equally. *See City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993); *Allen v. Toombs*, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that ' "the defendants acted with an intent or purpose to discriminate against

[them] based upon membership in a protected class,' " (citing *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Department of Agr.*, 553 U.S. 591, 601-02, 128 S.Ct. 2146, 170 L.Ed.2d 975 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008); *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not stated a cognizable equal protection claim. Plaintiff does not allege that he was discriminated against because of his membership in any protected class. Plaintiff's conclusory allegation that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose is insufficient. Plaintiff's conclusory allegations are insufficient. Plaintiff has not provided any factual support for this claim. *Fletcher v. Clendenin*, No. 1:22-CV-00249 AWI BAM, 2022 WL 2791480, at *5 (E.D. Cal. July 15, 2022) (Equal Protection claim dismissed for failure to allege factual support for denial of treatment based on membership in a protected class). Plaintiff has been unable to cure this deficiency.

### D.     Title 15 and Policy Violation

To the extent that Defendant has not complied with applicable state statutes or prison regulations for failure to follow procedures, these deprivations do not support a claim under §1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D.

Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations); *Tirado v. Santiago*, No. 1:22-CV-00724 BAM PC, 2022 WL 4586294, at *5 (E.D. Cal. Sept. 29, 2022), report and recommendation adopted, No. 1:22-CV-00724 JLT BAM PC, 2022 WL 16748838 (E.D. Cal. Nov. 7, 2022) (same).

### E.     State Law Claims

Plaintiff alleges compliance with the Government Claim Act. To the extent Plaintiff also alleges violations of California law, Plaintiff is informed that the California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. *State v. Superior Court of Kings County (Bodde),* 32 Cal.4th 1234, 1239 (Cal. 2004); *Shirk v. Vista Unified School District*, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; *Bodde*, 32 Cal.4th at 1244. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a compliant to general demurrer for failure to state a cause of action." *Bodde*, 32 Cal.4th at 1239.

Plaintiff attaches as an exhibit to the complaint a "Government Claim." (ECF No. 8, p. 22.) While this document may be subject to subsequent challenge as validly exhausting state remedies, for purposes of screening, the form is sufficient.

<u>State Law Claim - California Civil Code section 52.1</u>

California Civil Code section 52.1 ("Bane Act") prohibits a person from interfering or attempting to interfere "by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civil Code § 52.1(a). "The

9

essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007) (citing *Jones v. Kmart Corp.,* 17 Cal.4th 329, 334 (1998)).

Coercion is a required element for a Bane Act claim. *See Scalia v. County of Kern*, 308 F. Supp. 3d 1064, 1084 (E.D. Cal. 2018) ("A plaintiff bringing a claim pursuant to the Bane Act 'must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion.'") (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015), as modified on denial of reh'g (Mar. 6, 2015)); *see also Jones v. Kmart Corp.*, 17 Cal. 4th at 338 (interpreting the Bane Act's use of "interferes" to mean "violates"); *Brown v. County of Mariposa*, No. 1:18-cv-01541-LJO-SAB, 2019 WL 1993990, at *12 (E.D. Cal. May 6, 2019) (denying a motion to dismiss a Bane Act claim against certain defendants as to whom the plaintiff had adequately stated a deliberate indifference claim, but dismissing the Bane Act claim against other defendants as to whom plaintiff's allegations were deemed insufficient).

Liberally construing the allegations, Plaintiff states a cognizable claim against Defendant Bass where Bass threatened and used intimidation related to the alleged retaliatory transfer and to violate Plaintiff's religious rights by requiring a COVID vaccination. *Scalia*, 308 F.Supp.3d at 1084 (deliberate indifference in an underlying constitutional violation is sufficient for "a coercive act.")

**V.     Conclusion and Order**

Based on the foregoing, the Court finds that Plaintiff's first amended complaint states cognizable claims against Defendant M. Bass, correctional counselor II, for retaliation and for denial of free exercise of religion in violation of the First Amendment, and for violation of the Bane Act, California Civil Code 52.1.  However, Plaintiff's first amended complaint fails to state any other cognizable claims against any other defendants.  Despite being provided the relevant pleading and legal standards, Plaintiff has not been able to cure the identified deficiencies and

further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY ORDERED as follows:

1. The findings and recommendations issued on September 6, 2023, (ECF No. 10), are VACATED;
2. This action SHALL proceed on Plaintiff's first amended complaint, filed August 25, 2023, (ECF No. 8), against Defendant M. Bass, correctional counselor II, for retaliation and for denial of free exercise of religion in violation of the First Amendment, and for violation of the Bane Act, California Civil Code section 52.1; and
3. All other claims and defendants are DISMISSED based on Plaintiff's failure to state claims upon which relief may be granted.

IT IS SO ORDERED.

Dated: __September 7, 2023__        /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE

11